DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ABRAHAM SEGALL,**
Appellant,

v.

**WACHOVIA BANK, N.A.,** as Trustee for
J.P. MORGAN MORTGAGE TRUST 2005-A8,
Appellee.

No. 4D14-4424

[June 1, 2016]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Lynn Rosenthal, Judge; L.T. Case No. CACE 09004020(11).

Brian Korte, Scott J. Wortman and Daniel Bialczak of Korte & Wortman, P.A., West Palm Beach, for appellant.

Sarah T. Weitz of Weitz & Schwartz, P.A., Fort Lauderdale, for appellee.

KLINGENSMITH, J.

Abraham Segall appeals from a final judgment of foreclosure in favor of Wachovia Bank, N.A. as trustee for J.P. Morgan Mortgage Trust 2005-A8. Among several issues raised on appeal, we write solely to address Segall's claim that Wachovia failed to prove its standing to foreclose. We agree and reverse.

Segall and his wife signed a promissory note and mortgage with J.P. Morgan Chase Bank, N.A. ("Chase Bank"). Chase Bank later transferred the original note to Chase Home Finance, LLC ("Chase Home"), as evidenced by an allonge attached to the note reflecting a specific endorsement from Chase Bank to Chase Home. Chase Home subsequently merged into Chase Bank.

On the same day that Wachovia filed its foreclosure complaint against Segall, it acquired the note and mortgage by way of an assignment of

mortgage from Chase Bank. In the initial complaint, Wachovia asserted that it was entitled to enforce the note as a holder of the instrument.

Segall contested Wachovia's standing, arguing that the chain of ownership of the note belied Wachovia's status as holder because the special endorsement indicated that Chase Home, not Chase Bank, was the most recent holder. Therefore, Segall argued that because Chase Home was the true owner of the note and mortgage, Chase Bank could not have assigned its ownership rights to Wachovia.

Wachovia's witness testified that while the note was specially endorsed from Chase Bank to Chase Home, the two companies merged in 2007 to become one entity. When Wachovia's counsel moved to offer the assignment into evidence, defense counsel objected based on best evidence, speculation, and lack of predicate, arguing that "[t]here's been no documentation evidence showing that there was a merger between [Chase Home] and [Chase Bank]," and that the special endorsement indicated they were separate entities. The trial court overruled the objection, and later denied Segall's motion for involuntary dismissal, in which he argued that Wachovia lacked standing to foreclose. The trial court ultimately rendered final judgment of foreclosure in favor of Wachovia.

"We review the sufficiency of the evidence to prove standing to bring a foreclosure action *de novo*." *Jelic v. LaSalle Bank, Nat'l Ass'n*, 160 So. 3d 127, 129 (Fla. 4th DCA 2015) (*quoting Lacombe v. Deutsche Bank Nat'l Trust Co.*, 149 So. 3d 152, 153 (Fla. 1st DCA 2014)). "[S]tanding must be established as of the time of filing the foreclosure complaint." *Jarvis v. Deutsche Bank Nat'l Trust Co.*, 169 So. 3d 194, 196 (Fla. 4th DCA 2015) (alteration in original) (quoting *Focht v. Wells Fargo Bank, N.A.*, 124 So. 3d 308, 310 (Fla. 2d DCA 2013)). Additionally, "[o]nce a defendant contests the plaintiff's standing as the proper party to enforce a note via foreclosure, the plaintiff's right to bring suit on the note at the requisite time becomes a disputed issue the plaintiff must prove." *Ham v. Nationstar Mortg., LLC*, 164 So. 3d 714, 719 n.1 (Fla. 1st DCA 2015).

When a note is specially endorsed, as the note is in this case, it "becomes payable to the identified person and may be negotiated only by the indorsement of that person*." Lamb v. Nationstar Mortg., LLC*, 174 So. 3d 1039, 1040 (Fla. 4th DCA 2015) (quoting § 673.2051(1), Fla. Stat. (2013)); *see also Guzman v. Deutsche Bank Nat'l Trust Co.*, 179 So. 3d 543, 545 (Fla. 4th DCA 2015) ("For a plaintiff to qualify as a holder of a promissory note, the note must either list the plaintiff as the payee, or it

'must bear a special endorsement in favor of the plaintiff or a blank endorsement.'" (quoting *McLean v. JP Morgan Chase Bank Nat'l Ass'n*, 79 So. 3d 170, 173 (Fla. 4th DCA 2012))). "Where a bank is seeking to enforce a note which is specially indorsed to another, it may prove standing 'through evidence of a valid assignment, proof of purchase of the debt, or evidence of an effective transfer.'" *Lamb*, 174 So. 3d at 1040 (quoting *Stone v. BankUnited*, 115 So. 3d 411, 413 (Fla. 2d DCA 2013)). One type of such an "effective transfer" is a corporate merger, whereby a surviving entity may enforce the note and mortgage of the predecessor.

Section 607.1106 provides that in the event of a merger between corporations, "[e]very other corporation party to the merger merges into the surviving corporation and the separate existence of every corporation except the surviving corporation ceases." § 607.1106(1)(a), Fla. Stat. (2007). Additionally, the title to or any interest in property "owned by each corporation party to the merger is vested in the surviving corporation without reversion or impairment." § 607.1106(1)(b). The surviving corporation becomes "responsible and liable for all the liabilities and obligations of each corporation party to the merger," and "[a]ny claim existing or action or proceeding pending by or against any corporation party to the merger may be continued as if the merger did not occur or the surviving corporation may be substituted in the proceeding for the corporation which ceased existence." § 607.1106 (1)(c)–(d). In short, the surviving corporation succeeds to all of the rights, privileges, immunities, and property of the other entities party to the merger by operation of law, without the necessity of either a bill of sale or other assignment.

Section 655.417(1), which concerns the effect of merger, consolidation, conversion, or acquisition, provides:

> Even though the charter of a participating or converting financial entity has been terminated, the resulting financial entity is deemed to be a continuation of the participating or converting financial entity such that all property of the participating or converting financial entity, including rights, titles, and interests in and to all property of whatsoever kind, whether real, personal, or mixed, and things in action, and all rights, privileges, interests, and assets of any conceivable value or benefit which are then existing, or pertaining to it, or which would inure to it, are immediately vested in and continue to be the property of the resulting financial entity, by act of law and without any conveyance or transfer and

3

without further act or deed; and such financial entity has, holds, and enjoys the same in its own right as fully and to the same extent as the same was possessed, held, and enjoyed by the participating or converting financial entity; and, at the time of the taking effect of such merger, consolidation, conversion, or acquisition, the resulting financial entity has and succeeds to all the rights, obligations, and relations of the participating or converting financial entity.

§ 655.417(1), Fla. Stat. (2007).

Therefore, if Wachovia presented sufficient evidence proving that the alleged merger occurred, then Chase Bank, as the surviving corporation, would have succeeded to Chase Home's status as owner and holder of the promissory note by operation of law, and would have had the authority to transfer the note to Wachovia via assignment of the mortgage. *See, e.g.*, *Tilus v. AS Michai LLC*, 161 So. 3d 1284, 1286 (Fla. 4th DCA 2015) (stating that a party can prove standing to foreclose via an assignment of mortgage executed prior to the inception of the lawsuit, so long as the assignment reflects an intention to transfer both the note and the mortgage).

The analogous federal law applicable specifically to the merger of banks provides:

The corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association and such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger. All rights, franchises and interests of the individual merging banks or banking associations in and to every type of property (real, personal, and mixed) and choses in action shall be transferred to and vested in the receiving association by virtue of such merger without any deed or other transfer. The receiving association, upon the merger and without any order or other action on the part of any court or otherwise, shall hold and enjoy all rights of property, franchises, and interests, including appointments, designations, and nominations, and all other rights and interests as trustee, executor, administrator, registrar of stocks and bonds, guardian of

estates, assignee, receiver and committee of estates of lunatics, and in every other fiduciary capacity, in the same manner and to the same extent as such rights, franchises, and interests were held or enjoyed by any one of the merging banks or banking associations at the time of the merger, subject to the conditions hereinafter provided.

12 U.S.C. § 215a(e) (2006).

These statutes make it clear that a foreclosing party can establish standing to foreclose based upon a merger. However, achieving standing via merger also requires that the surviving entity prove that it "acquired all of [the absorbed entity's] assets, including [the] note and mortgage, by virtue of the merger." *Fiorito v. JP Morgan Chase Bank, Nat'l Ass'n*, 174 So. 3d 519, 521 (Fla. 4th DCA 2015).

In *Fiorito*, the plaintiff attempted to prove its standing to foreclose based upon its ownership and possession of a note containing an undated, blank endorsement, which it acquired by way of a merger with the bank that originated the loan. *Id.* at 520–21. While the plaintiff's witness testified that a merger had taken place, the witness did not establish that the successor bank acquired the subject note and mortgage by virtue of the merger. *Id.* at 521. Accordingly, we held that evidence of standing was lacking:

> While Chase also could have established standing through its merger with [Washington Mutual Bank, FA ("WAMU")], the officer's testimony fell short of establishing that Chase acquired all of WAMU's assets, including Appellant's note and mortgage, by virtue of the merger. The officer only testified that Chase merged with, and "took over," WAMU on September 25, 2008. The officer never testified that Chase acquired all or any of WAMU's assets, nor did he testify as to when Chase became the owner of the note. *Cf. Stone*, 115 So. 3d at 413 (bank employee specifically testified that the plaintiff bank acquired all of the prior bank's assets pursuant to a purchase assumption agreement). Thus, because Chase failed to establish when it became the owner of the note, the trial court erred in finding that Chase had standing to initiate the foreclosure action.

*Id.* at 521–22.

Similarly in *Lamb*, which involved a corporate acquisition as opposed to a merger, we found that despite the witness's testimony that the plaintiff acquired the entity to which the subject note was specially endorsed, standing was not established because there was no evidence that the foreclosing party "acquired [the] particular note which [bore the] special indorsement" to the subsumed entity. 174 So. 3d at 1041.

Other than the bare assertion by Wachovia's witness at trial, there are no documents in the record indicating that the merger of Chase Home and Chase Bank took place. While the term "merger" is used in common parlance to describe the combination of two corporate entities, it has specific legal meaning for corporations generally, and in the banking industry specifically. A lay witness's mere use of the term "merger" to describe two companies combining into one entity, without more, could imply a true merger as defined under sections 655.417(1) or 215a(e), but could also imply some other form of corporate consolidation, including but not limited to a purchase and sale of select liabilities and assets.

The consolidation of two distinct financial institutions can be an extraordinarily complex transaction, which may include numerous limitations on the transfer and assumption of assets and liabilities relating to transfers of title, exceptions to what is being transferred, recourse between parties to the deal, and other qualifications in both public and confidential business documents. The intricacies of these details can tax the imagination. It would have been a simple matter for Wachovia to present evidence of a true merger if one had in fact occurred. Wachovia could have readily obtained documentation that may have provided sufficient evidence of the merger, and proved that Chase Bank had the authority to assign the mortgage.

Here, Wachovia did not provide sufficient evidence to enable the trial court to discern the extent of any assets transferred between Chase Bank and Chase Home, or that a merger in accordance with sections 655.417(1) or 215a(e) had taken place. Testimony that a merger had occurred, without more, is insufficient to prove the extent of the consolidation, or that the transfer of the asset in question was included as part of the purported transaction. *See Shores v. First Fla. Res. Corp.*, 267 So. 2d 696, 696 (Fla. 2d DCA 1972) (holding that when a corporation admitted to transferring "some mortgages" to various entities, corporate officers' "bare affirmation" that the subject note was not assigned along with the other mortgages, without more, failed to establish the claimed nonoccurrence).

Because Wachovia failed to sufficiently prove that Chase Home merged with Chase Bank, and that Chase Bank thus acquired the note, there was no evidence that Chase Bank had the authority to further transfer the note by assigning the mortgage to Wachovia. As such, Wachovia failed to prove that it had standing to foreclose. We therefore reverse and remand this case for entry of an order of involuntary dismissal. *Lamb*, 174 So. 3d at 1041.

*Reversed and Remanded.*

CIKLIN, C.J., and WARNER J., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***